UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ASHLEY A. V.,[1] | |
| Plaintiff, | Case No. 1:24-cv-00267-DKG |
| | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**INTRODUCTION**

Plaintiff filed a Complaint for judicial review of the Commissioner's denial of her application for a period of disability and disability insurance benefits. (Dkt. 1). Having reviewed the Complaint, the parties' memoranda, and the administrative record (AR), the Court will affirm the decision of the Commissioner for the reasons set forth below.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# BACKGROUND

On September 11, 2019, Plaintiff protectively filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging a disability onset date of February 1, 2019. (AR 63). Plaintiff's application was denied upon initial review and on reconsideration. A hearing was conducted by Administrative Law Judge ("ALJ") Stephen Marchioro on May 26, 2021, at which the ALJ heard testimony from Plaintiff and a vocational expert. (AR 13). On August 5, 2021, ALJ Marchioro issued a written decision finding Plaintiff was not under a disability from the alleged onset date, through the date of the decision, and therefore determined Plaintiff was not disabled. (AR 13-25). Plaintiff timely requested review by the Appeals Council, which denied her request.

Plaintiff sought review of the final decision of the Commissioner in the United States District Court for the District of Idaho. *Ashely A. V. v. Kijakazi*, 1:22-cv-00288-REP (D. Idaho May 22, 2023); (AR 2761-75). U.S. Magistrate Judge Raymond Patricco remanded the claim under "sentence four" of 42 U.S.C. § 405(g), determining that the ALJ failed to properly evaluate the medical opinion evidence and erred, in part, in rejecting Plaintiff's symptom testimony. *Id*.

The Appeals Council ordered the ALJ to conduct further proceedings on remand. (AR 2663). ALJ Marchioro conducted a telephonic hearing on February 15, 2024, at which Plaintiff and a vocational expert testified. (AR 2663, 2691-2726). The ALJ again issued a written decision finding Plaintiff was not under a disability from the alleged

onset date, through the date of the decision, and therefore determined Plaintiff was not disabled. (AR 2663-81).

At the time of the alleged disability onset date, Plaintiff was thirty-three years of age, which is defined as a young individual. (AR 2679). Plaintiff is a high school graduate and has past relevant work experience as a nurse manager and a registered nurse. *Id.* Plaintiff claims disability due to physical and mental impairments, including cerebrovascular accident due to bacterial meningitis, anxiety, depression, migraines, obesity, hypertension, and status-post hysterectomy. (AR 2666).

## THE ALJ'S DECISION

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

Here, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 2665). Plaintiff did work after the alleged onset date, however, the ALJ found such work to be an unsuccessful work attempt. (AR 2265-66). At step two, the ALJ determined Plaintiff suffers from the following medically determinable severe impairments: cerebrovascular accident due to bacterial meningitis,

**MEMORANDUM DECISION AND ORDER - 3**

anxiety, and depression. (AR 2666). Plaintiff's migraine headaches, obesity,

hypertension, and status-post hysterectomy were found to be non-severe. *Id*.

At step three, the ALJ determined that, through the date last insured, Plaintiff did

not have an impairment or combination of impairments that meets or medically equals

the severity of a listed impairment. *Id*. The ALJ next found Plaintiff retained the Residual

Functional Capacity ("RFC") for sedentary work with the following limitations:

> She can only occasionally climb ramps or stairs, balance, as that term is
> defined by the Selected Characteristics of Occupations, stoop, kneel,
> crouch, and crawl. She can never climb ladders, ropes, or scaffolds. She
> must avoid concentrated exposure to pulmonary irritants, such as fumes,
> odors, dust, and gases. She must avoid all exposure to unguarded moving
> mechanical parts, such as table saws, ban saws, and exposed mechanical
> gears. She must avoid all exposure to unprotected heights. She is limited to
> a work environment that has no more than a moderate noise level as that
> term is defined by the Selected Characteristics of Occupations. She is
> precluded from work that has a production rate pace, such as assembly line
> work. She is precluded from a workspace that has regular exposure to
> flashing or strobe lights. She has the ability to understand, remember, and
> apply information sufficient to perform only reasoning level 1, 2, and 3
> jobs. She can tolerate no more than occasional changes in the work setting.

(AR 2668-69).

At step four, the ALJ found Plaintiff unable to perform any past relevant work

and, therefore, proceeded to step five. (AR 2679). Relying upon the vocational expert, the

ALJ found that other jobs exist in significant numbers in the national economy that

Plaintiff can perform given her age, education, work experience, and RFC, such as:

charge account clerk, touch up screener, and table worker. (AR 2680). The ALJ therefore

determined Plaintiff was not disabled from February 1, 2019, through the date of

decision. (AR 2680).

**MEMORANDUM DECISION AND ORDER - 4**

## ISSUES FOR REVIEW

1.    Whether the ALJ properly evaluated the medical opinion evidence.

2.    Whether the ALJ properly evaluated Plaintiff's subjective symptom statements.

3.    Whether the ALJ properly considered the nonmedical source statements.

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Id.* The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Id.* at 1010; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence

**MEMORANDUM DECISION AND ORDER - 5**

presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id*. The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). The Court will not reverse the ALJ's decision if it is based on harmless error, which exists where the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal marks and citations omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1117–1122 (9th Cir. 2012).

## DISCUSSION

### 1. Medical Opinion Evidence

Plaintiff first argues the ALJ erred in evaluating the medical opinion evidence. (Dkt. 13, 21). Defendant maintains the ALJ considered the opinion evidence consistent with the applicable regulations. (Dkt. 18).

### A.    Legal Standard

Under the regulations governing an ALJ's evaluation of medical opinion evidence for claims filed on or after March 27, 2017, such as here, the ALJ evaluates the persuasiveness of the opinions based on several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* (quoting 20 C.F.R. § 404.1520c(c)(2)). The ALJ is required to articulate how persuasive they find the evidence and explain how the supportability and consistency factors were considered. *Id.*; 20 C.F.R. § 404.1520c(b)(2); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."); *see also Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence). The absence of either a supportability or consistency finding is not itself fatal to an ALJ's evaluation of opinion evidence, because a finding as to either factors may constitute a sufficient basis for the ALJ's finding regarding the persuasiveness of an option if the ALJ's decision is supported by substantial evidence. *Woods*, 32 F.4th at 792-94 & n. 4 (supportability and consistency are distinct factors that are treated separately).

The ALJ may, but is not required to, explain how the other persuasive factors in paragraphs (c)(3) through (c)(5) were considered. 20 C.F.R. § 404.1520c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not

**MEMORANDUM DECISION AND ORDER - 7**

exactly the same," the ALJ is required to explain how the other persuasive factors were considered. 20 C.F.R. § 404.1520c(b)(3). The ALJ's persuasiveness determination must be supported by substantial evidence. *Woods*, 32 F.4th at 787.

### B.    Medical Opinions

#### i.    State Agency Consultants' Opinions

Plaintiff alleges that the ALJ erred by finding the state agency medical and psychological consultants' opinions to be partially persuasive, and consequently the ALJ failed to provide explanation for how the RFC was derived. (Dkt. 13 at 7-11). Defendant contends that the ALJ properly found the opinions to be partially persuasive and included greater limitations that those of the state agency consultants, resulting in any possible error in the ALJ's evaluation of the opinions being harmless. (Dkt. 18 at 8).

Stage agency medical consultant Cusack opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and determined that such limitations were due to Plaintiff's ongoing fatigue and were secondary to Plaintiff's history of cortical infarct in 2019. (AR 71). Cusack opined that Plaintiff could frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds, and should avoid even moderate exposure to hazards. (AR 72-73). Cusack found that Plaintiff should be limited to light work. Medical consultant Coolidge concurred with Cusack's opinion that Plaintiff could perform work at the light exertional level with additional limitations. (AR 87-91).

The ALJ found both the state agency medical consultants' opinions to be partially persuasive, in that some of the opined physical and mental limitations were consistent

with the objective medical evidence and observable signs documented in the overall

record. (AR 2678). Specifically, the ALJ found that Cusack and Coolidge's opined

physical limitations indicating Plaintiff could work at the light exertional level exceeded

Plaintiff's abilities. (AR 2679). The ALJ found Plaintiff's history of stroke and reports of

problems with balance, dizziness, lightheadedness, and significant fatigue would be

expected to impact Plaintiff's physical exertion. *Id*. The ALJ noted that Plaintiff's

physical examination findings did not suggest any significant pain complaints. *Id*. The

ALJ then found Plaintiff's physical impairments demonstrated that she has the ability to

work at the sedentary exertional level consistent with the RFC. *Id*. The ALJ concluded

his evaluation by stating that Cusack and Coolidge did not adequately consider Plaintiff's

subjective complaints and the cumulative effect of her symptoms. *Id*.

State agency psychological consultant Dennis opined that Plaintiff's mental health

impairments would cause only mild limitations in her ability to interact with others,

concentrate, persist, or maintain pace, and adapt and manage herself. (AR 69). State

agency consultant Stephenson opined that Plaintiff's mental impairments would cause

mild limitations in her ability to understand, remember, or apply information, interact

with others, and adapt or manage herself. (AR 86). Stephenson also opined that Plaintiff's

impairments would cause moderate limitations in her ability to concentrate, persist, or

maintain pace. *Id*.

Again, the ALJ concluded that the state agency psychological consultants'

opinions were partially persuasive, finding that some of the opined limitations were

consistent with the objective medical evidence and observable signs in the medical

record. (AR 2678). Then the ALJ went on to state that regarding Plaintiff's mental limitations, he gave her the overall benefit of the doubt in finding her mental health complaints, in combination with her medical history, would reasonably be expected to result in moderate limitations in her ability to understand, remember and apply information, concentrate, persist, or maintain pace, and adapt and manage herself and mild limitations in her ability to interact with others. (AR 2678). The ALJ then reiterated the language in the RFC. (AR 2678-79).

The Court finds that the ALJ here properly considered the agency consultants' opinions, compared the opinions to other evidence in the record, described his reasons for finding the opinions to be only partially persuasive, and then gave explicit reasons for including greater limitations based on other evidence in the record. (AR 2678-79). Plaintiff fails to identify any specific errors in the ALJ's analysis of the agency consultants' opinions. Rather, Plaintiff's main complaint as it relates to those opinions is that the ALJ did not adequately cite to the record when evaluating the medical opinion evidence. (Dkt. 13 at 7, 11). When reviewing the entirety of the decision, it is clear to the Court that the ALJ considered all the evidence in the record and included numerous limitations in Plaintiff's RFC to account for the limiting effect of her symptoms. The ALJ's failure to cite to a specific record when evaluating the medical opinion evidence does not prove that there was evidence that was ignored or not properly considered. *See Vincent ex rel. Vincent*, 739 F.2d at 1394-95.

Even if the Court were to disagree with the conclusion of the ALJ, which it does not, the ALJ's decision must be upheld where the evidence is susceptible to more than

one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Accordingly, the Court is not persuaded by Plaintiff's argument that the ALJ erred when

evaluating the consultants' opinions. To the contrary, the Court finds substantial evidence

supports the ALJ's determination that the opinions were partially persuasive, and the

RFC determination was well reasoned and supported. The ALJ's path is discernable

when the ALJ's decision is considered as a whole.

Additionally, because the ALJ included limitations resulting in a narrower RFC

than that opined by the agency consultants, any resulting error in imposing the additional

limitations would be harmless. That is because the additional limitations are a benefit (not

prejudice) to Plaintiff. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th

Cir. 2006) (collecting cases and finding that a court may affirm the determinations of an

ALJ "under the rubric of harmless error where the mistake was nonprejudicial to the

claimant or irrelevant to the ALJ's ultimate disability conclusion," including where the

error was in the claimant's favor). The ALJ found the agency consultant's opinions to be

partially persuasive but included greater limitations in the RFC due to inconsistencies

between the opinions and Plaintiff's mental health complaints and the cumulative effects

of her symptoms. (AR 2678-79). In summation, substantial evidence supports the ALJ's

findings as to his treatment of the agency consultants' opinions and Plaintiff has failed to

identify any harmful error.

### ii.    Dr. King's Opinion

Plaintiff's treatment provider, Ashley King, MD., provided a medical assessment

of Plaintiff's ability to do physical work-related activities, a treating source statement for

mental findings with a corresponding check box form, and a medical consultant's review of her physical RFC assessment. (AR 2650-59, 2676, 2912-13).

Regarding her physical limitations, King opined that Plaintiff could work only two hours in an eight-hour workday and would be absent from work four days per month. (AR 2560). King opined that Plaintiff could stand for two hours, walk without interruption for 30 minutes, and sit for two hours for only 20 minutes at a time, in an eight-hour workday. (2650-51). King found Plaintiff able to lift 20 pounds occasionally and 5 pounds frequently, occasionally climb and crawl but frequently stoop, crouch, and kneel, and occasionally push and pull. (AR 2651-52). King found Plaintiff to require environmental limitations related to heights, temperature extremes, noise, fumes, and vibration, due to Plaintiff's headaches, insomnia, memory loss, and severe fatigue related to ongoing mental and physical impairments. (AR 2652-53, 2676).

Regarding Plaintiff's mental impairments, King opined that Plaintiff had mild limitations with social interactions, moderate limitations in understanding and memory, moderate limitations in her ability to be aware of normal hazards and take appropriate caution, but both marked and moderate limitations in sustained concentration and persistence, and adaption related to traveling in unfamiliar places or using public transportation. (AR 2656-57, 2676). This form accompanied a letter indicating Plaintiff had undergone extensive evaluation and treatment but remained profoundly fatigued with even minimal exertion, she suffers from chronic headaches and issues with her cognitive function, and that her depression had improved since she stopped working. (AR 2654-76). King then reviewed Plaintiff's RFC and indicated that she had reached maximum

recovery but has continued fatigue, headaches, memory concerns, aphasia, depression, and her significant fatigue impacts her exertional capacity. (AR 2676, 2912).

The ALJ found King's opinion unpersuasive. (AR 2676). The ALJ determined that the evidence in the record supported the conclusion that Plaintiff does not have any areas of marked limitations from a mental health standpoint, pointing to evidence of Plaintiff responding well to counseling and medications per her self-reports. *Id.* The ALJ found King's opinion that Plaintiff can lift 20 pounds occasionally and 5 pounds frequently to be inconsistent and found no support for a finding that Plaintiff can sit for only two hours in an eight-hour workday. *Id.* The ALJ found Plaintiff's ongoing fatigue, headaches, memory concerns, anxiety, and depression would be expected to result in Plaintiff having the capacity for only sedentary exertional activity with other limitations including several environmental limitations. *Id.*

Plaintiff argues that the ALJ erred because he did not compare and contrast King's opinions with the record as a whole and failed to provide specific citations to the record when finding the opinion unpersuasive. (Dkt. 13 at 7). Plaintiff briefly mentions that the ALJ failed to provide meaningful supportability and consistency analysis but does not significantly engage with this argument further. (Dkt. 13 at 10).

The Court disagrees with Plaintiff's assertion that the ALJ failed to compare King's opinion with the record as a whole. Although the ALJ used the word "support" in finding that evidence in the record demonstrating that Plaintiff responded well to counseling and medications, per her own self-reports, "support[ed] the conclusion that [she] does not have any areas of marked limitation" such an explanation is a valid

consistency finding as it relates to King's opinion. (AR 2676). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). Put another way, the ALJ here found King's opinion that Plaintiff had marked limitations in several mental functional areas to be inconsistent with evidence in the record demonstrating that Plaintiff responded well to counseling and medications, per her own self-reports.

The ALJ identified several instances in the record when summarizing the medical evidence to support this finding. The ALJ noted that in September 2019, Plaintiff reported having some relief with Celexa, Wellbutrin, and Xanax, noting that she rarely used Xanax. (AR 625, 2673). In November 2019, Plaintiff reported improvements with cognitive therapy by utilizing all attention strategies and felt it was helping her manage her day and do tasks better. (AR 1102, 2674). In March 2020, Plaintiff reported the medication Provigil had been extremely helpful to her, she had continued to take Celexa and Wellbutrin and was feeling much better. (AR 1400, 2675). Plaintiff also reported she was not currently in counseling but had been really working on her anxiety. *Id*. In August 2020, Plaintiff reported at occupational therapy that she was doing really well, continuing to improve her exercises, and did not feel that she needed to continue therapy. (AR 2147, 2675). In September 2020, Plaintiff continued to report that her mood was good, she was managing her stress, and no longer needed further social work services at that time. (AR 2176, 2180, 2675). In November 2020, Plaintiff reported she felt more level with her medication, and that her home treatment plan had been quite successful. (AR 2205, 2675).

**MEMORANDUM DECISION AND ORDER - 14**

The ALJ expressly acknowledged Plaintiff's worsening mental health symptoms beginning in October 2021. (AR 2677). However, in November 2021, Plaintiff reported mild improvement in mood, and that she had begun counseling and reported it was very helpful. (AR 2677, 3323). Similarly, in January 2022, the ALJ acknowledged that Plaintiff was treated at the hospital for severe depression and suicidal ideation (AR 2677, 3210), though notably, Plaintiff had previously stopped taking her medication because she was sick with COVID-19. (AR 2677, 3257). Relatedly, in follow up records, Plaintiff reported improvements with medication changes. (AR 2677, 3177). In September 2022, Plaintiff reported she was "doing good" as to her mood and that she had been "doing well" as to her medications. (AR 2677, 3139-42). In January 2023, Plaintiff was discharged from mental health therapy after meeting her goals. (AR 2677, 3078). In June 2023, Plaintiff reported feeling less irritable and depressed. (AR 2678, 3003). In November 2023, Plaintiff reported doing fairly well in recent months. (2678, 2920).

The ALJ expressly acknowledged Plaintiff's ongoing mental health symptoms, fatigue, and cognitive issues (AR 2678), and included limitations in the RFC to address the impacts of those symptoms including working at the sedentary exertional level, with additional postural and environmental limitations, and precluding her from work at a production rate pace, such as an assembly line, and limiting her ability to understand, remember, and apply information sufficiently to perform only reasoning level 1, 2, and 3 jobs, and no more than occasional changes in the work setting. (AR 2669, 2678).

Plaintiff does not explain what additional limitations the ALJ should have included in the RFC, beyond arguing for a different interpretation of the medical

evidence in the record. Plaintiff's arguments that the record more strongly supports her version of events are an effort to have this Court re-weigh the evidence, which is beyond the scope of review. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Even when there are two reasonable interpretations—Plaintiff's and the ALJ's—the ALJ's interpretation must prevail. *Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). Against that backdrop, even though Plaintiff clearly interprets the evidence differently, she has not (and cannot) establish harmful error by simply advancing a different interpretation of the medical evidence.

The ALJ may not have included voluminous citations to the record when evaluating King's opinion and finding it inconsistent with Plaintiff's response to treatment and self-reports to providers, but that lack of consistency, when considering the entire decision and the ALJ's thorough evaluation of the medical evidence, provides a sufficient explanation for finding King's opinion to be unpersuasive, given the highly deferential substantial evidence standard. *Collins v. Colvin*, 2024 U.S. App. LEXIS 31190, at *3-4 (9th Cir. 2024) (citing *Woods*, 32 F.4th at 793 n.4 (upholding an adverse persuasiveness determination based only on inconsistencies between a medical opinion and the medical record.). As such, the Court finds the ALJ's finding that King's opinion

lacked consistency with the record and was therefore unpersuasive is supported by substantial evidence in the record and free from harmful error.[2]

## 2. Subjective Symptom Testimony

Plaintiff next argues that the ALJ failed to provide clear and convincing reasons to disregard her subjective symptom statements. (Dkt. 13 at 12). Defendant contends that substantial evidence supports the ALJ's assessment of Plaintiff's symptom statements, because the ALJ found her testimony to be inconsistent with her treatment history, daily activities, and objective medical evidence in the record. (Dkt. 18 at 10-18).

Where the record contains objective medical evidence "establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which [s]he complains" and there has not been an affirmative finding of malingering, a claimant's subjective symptom testimony may only be rejected for clear and convincing reasons. *Carmickle*, 533 F.3d at 1160. The clear and convincing standard does not require this Court to be convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

The ALJ summarized Plaintiff's first functional report where she stated that her chronic fatigue limits her ability to function. (AR 2669). She discussed her attempt at returning to work after her serious meningitis illness but was unable to work due to stress

---

[2] Though Plaintiff does not make a specific argument regarding the ALJ's supportability analysis of King's opinion, because the Court here found the ALJ's consistency finding to be supported by substantial evidence in the record, any error as to the ALJ's supportability finding would be harmless error and inconsequential to the overall disability determination. *See Woods*, 32 F. 4th at 792-93 n.4 (upholding the ALJ's evaluation of the medical opinion evidence where the ALJ did not make a supportability finding, but the consistency finding was supported by substantial evidence).

**MEMORANDUM DECISION AND ORDER - 17**

affecting her work productivity and cognitive functioning. (AR 372-3, 2669). The ALJ noted that Plaintiff's function report, and several third-party reports, described Plaintiff as having significant difficulty with task performance and basic overall cognitive functioning. (AR 2669). Plaintiff reported she helps her kids get ready for school and takes them to school, picks the kids up from school, helps them with homework and feeding, prepares simple meals, cleans, does laundry, vacuums, gardens, and is independent in shopping and managing money. *Id*. Plaintiff's hobbies include reading, watching movies, drawing and doing crafts. *Id*. Plaintiff interacts with her family, her sister's family, and attends church. (AR 2669-70). Plaintiff is alleged to have a short attention span and impaired memory with difficulty completing tasks without written instructions or simple steps. (AR 2670).

The ALJ then discussed Plaintiff's second function report, where Plaintiff reported she takes care of her kids during the day, does laundry, spends time with her family, prepares quick meals, picks up, vacuums, and dusts, but does minimal other cleaning. *Id*. Plaintiff gets around daily, shops, is independent at managing money, and goes on daily walks. *Id*. She reported being sensitive to light and having a poor memory with difficulty concentrating. *Id*. The ALJ then found that Plaintiff appears to be fairly active managing her household in addition to her own self-care. *Id*. Additionally, the ALJ specifically included several limitations in Plaintiff's RFC to take into consideration her problems with loud noises, lights, changes in the work setting, and found her able to perform only sedentary exertional activity. *Id*. The ALJ also summarized Plaintiff's headache questionnaire, where she reported some weeks having 1 to 2 migraines and other weeks

having 5 to 6 migraines, typically lasting 8 to 12 hours where she cannot maintain most physical activities and has difficulty with cognitive functioning. (AR 2670). The ALJ then summarized the numerous third-party function reports written by Plaintiff's family members and former coworkers and supervisors. (AR 2670-72).

Thereafter, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effect of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 2672). The ALJ explained that while there is some evidence to support Plaintiff's allegations, the objective medical evidence and Plaintiff's activities and self-reports do not establish that she is as limited as alleged. *Id*. The ALJ pointed to minimal objective findings, conservative treatment measures, and Plaintiff's ability to work as being indicative of her ability to perform work at the sedentary level with additional limitations. (AR 2678).

Here, the ALJ provided clear and convincing reasons for rejecting Plaintiff's statements, namely, inconsistency with the objective medical evidence and Plaintiff's activities of daily living. (AR 2672); *Smith v. Kijakazi*, 2022 U.S. App. LEXIS 19014, at *7 (9th Cir. 2022) ("Under the deferential standard of review for credibility determinations, we generally leave it to the ALJ to determine credibility, while requiring that a finding that a claimant's testimony is not credible must be sufficiently specific to ensure that the ALJ did not arbitrarily discredit it.") (internal quotation marks omitted).

**MEMORANDUM DECISION AND ORDER - 19**

First, Plaintiff argues that the ALJ improperly summarized the medical evidence without indicating which symptoms the record refuted. (Dkt. 13 at 13). Plaintiff points to multiple medical records cited to in the decision and argues that those records demonstrate instead that Plaintiff is more impaired than identified by the ALJ. Specifically, the ALJ discussed a neuropsychological evaluation from December 2019. (AR 1204-05, 2674). The tests found Plaintiff to be alert and well-groomed with appropriate mood and effect. Her affect was predominately anxious but appropriate, and she easily established a positive rapport with the examiner. *Id*. Her speech rate, volume, fluency, and prosody was within normal limits, but she subjectively complained of occasional anomia. *Id*. Her thought process was logical and linear, and her thought content normal and coherent. *Id*. She had good comprehension and hearing, and no sound sensitivity was observed. *Id*. Her attention and concentration were within normal limits. *Id*. Plaintiff's remote memory recall appeared to be within normal limits other than retrograde/anterograde amnesia surrounding hospitalization. *Id*. Otherwise, her recent memory and recall appeared within normal limits. *Id*. Her processing speed, judgment, and insight were within normal limits. *Id*. The test administrator noted Plaintiff had a tendency to answer questions with highly similar content consistently, which could reflect either idiosyncratic responses or random/careless responding. *Id*. Plaintiff's overall performance during the evaluation was found to be generally valid and reliable. *Id*.

Ultimately, the ALJ found that the normal test results described above did not appear to be consistent with Plaintiff's and third-party reports of problems with memory,

brain fog, confusion, difficulty with concentration, and cognitive decline. (AR 2674). The ALJ found that Plaintiff did not appear to be as limited as alleged with respect to her cognitive functioning. *Id*. The ALJ reasonably concluded that Plaintiff's subjective symptom complaints were not fully consistent with medical evidence in the record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (an ALJ may reject subjective symptom testimony that is inconsistent with the medical record).

Plaintiff cites to medical evidence in the record that the ALJ specifically discussed, but simply contends that those records demonstrate a greater level of limitation than that identified in the RFC. (Dkt. 13 at 13-15). Again, Plaintiff having a differing view of the record is not a sufficient reason for remand. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (where the ALJ's interpretation of the evidence in the record is reasonable as it is here, it should not be second-guessed). Therefore, the ALJ's finding that medical evidence in the record was inconsistent with Plaintiff's testimony was a proper, clear and convincing reason for rejecting Plaintiff's symptom statements. *Smartt*, 53 F.4th at 498 (finding an inconsistency between a plaintiff's statements and medical evidence is a clear and convincing basis to discount symptom statements).

Second, Plaintiff alleges that the ALJ's finding that Plaintiff's activities of daily living were inconsistent with her symptom statements was improper. (Dkt. 13 at 16). Plaintiff contends that the ALJ failed to explain how the activities contradicted her testimony. *Id*. The ALJ discussed both of Plaintiff's functional reports, as well as the numerous third-party reports submitted by Plaintiff's family and former coworkers. (AR 2669-72). While the ALJ noted that some of the functional reports discussed Plaintiff's

difficulty with task performance and cognitive functioning, the ALJ also mentioned that several other reports described Plaintiff as essentially carrying out the duties of a stay-at-home parent to young children, even at times watching her nieces and nephews in addition to her own children. (AR 2669). The ALJ found those reports suggested Plaintiff had been more physically active than alleged and had greater cognitive and physical functioning than alleged. *Id*. The ALJ provides examples to support this finding, discussing Plaintiff's function report where she reported she helps her kids get ready for school and takes them to school, picks the kids up from school, helps them with homework and feeding, prepares simple meals, cleans, does laundry, vacuums, gardens, and is independent in shopping and managing money. *Id*. The ALJ reasonably concluded that Plaintiff's activities of daily living conflicted with her testimony regarding the severity of her physical and cognitive limitations. *see Rollins*, 261 F.3d at 857 (holding that an ALJ's adverse credibility determination was supported by substantial evidence where the claimant's daily activities included caring for her children's needs and leaving the house daily for appointments and shopping). As such, this was another clear and convincing reason, supported by substantial evidence, for the ALJ to rely upon to discount Plaintiff's subjective symptom testimony.

There are two specific records cited to by the ALJ that Plaintiff takes great issue with. First, there is a record the ALJ cites to when summarizing the medical evidence in which the provider stated that Plaintiff reported being at 90% of her prior baseline level of functioning. (AR 1193, 2674). Plaintiff points out that one basis for remand in the ALJ's first decision was his reliance on Plaintiff testifying that she was at "95% of her

former ability" (AR 2773), when that testimony was not present in the transcript of the first hearing and Plaintiff further testified that a record from August 2020 reporting Plaintiff told her provider she was 95% back to baseline was incorrect. (AR 2773); (Dkt. 13 at 14); *Ashley A. V.*, 1:22-cv-00288-REP. However, the record cited in the ALJ's decision before this Court, summarizing the medical record where Plaintiff reported being 90% of her baseline level, is from December 2019 and is therefore not the specific record in which Plaintiff testified to being incorrect during the first hearing. (AR 1193, 2773). Additionally, the ALJ merely summarized that record among the other medical evidence, and Plaintiff fails to demonstrate that the ALJ either specifically relied on that record in rejecting Plaintiff's symptom testimony, or that the record from December 2019 was incorrectly transcribed in anyway. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-09, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009)) (holding that the party challenging an administrative decision bears the burden of proving harmful error).

Second, Plaintiff takes issue with the ALJ's characterization of a record from December 2021 where Plaintiff reported to her provider that she needed more help at home with the house, kids, and meals (AR 3295), to which the ALJ interpreted such evidence as suggesting that Plaintiff "is more active in the home than alleged." (AR 2677); (Dkt. 13 at 15). The Court here agrees with Plaintiff that asking her spouse for help with the housework and childcare because of the impact of those activities on her symptoms does not necessarily suggest greater functioning than alleged or contradict Plaintiff's subjective symptom statements. However, this singular mischaracterization of

Plaintiff's statement to her provider is ultimately harmless because the ALJ provided other clear and convincing reasons to discount Plaintiff's symptom testimony. *See Stout*, 454 F.3d at 1055; *see also Carmickle*., 533 F.3d at 1162-63.

Viewing the decision in its entirety, other than the specific record cited above, the Court finds the ALJ properly explained his reasoning for discrediting Plaintiff's symptom testimony based on the objective medical evidence in the record and Plaintiff's activities of daily living. The ALJ thoroughly explained Plaintiff's symptoms as alleged in her functional reports and provided numerous limitations within the RFC that take into consideration Plaintiff's symptom complaints. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010) (Daily activities can be a basis for discrediting a claimant's testimony to the extent that they contradict claims of a totally debilitating impairment, even when those activities suggest some difficulty functioning). The ALJ's reasoning for rejecting Plaintiff's symptom testimony is evident when considering the decision as a whole – particularly the ALJ's discussion of Plaintiff's function reports and the objective medical evidence in the record. The Court finds that the ALJ identified clear and convincing reasons, supported by substantial evidence in the record and free from harmful error, for rejecting Plaintiff's symptom statements.

### 3. Lay Witness Statements

Finally, Plaintiff argues the ALJ improperly rejected the nonmedical source statement without providing germane reasons for doing so. (Dkt. 13 at 16). There were 13 lay witness statements from Plaintiff's family members and former co-workers and supervisors. *Id*. at 17. Defendant contends that the ALJ was not required to articulate

consideration of the nonmedical source statements, as the regulations do not include a requirement to expressly articulate how the ALJ considers the nonmedical source statements. (Dkt. 18 at 14) (citing 20 C.F.R. § 404.1520c(d)).

The ALJ summarized all of the nonmedical source statements but noted that an ALJ is not required to articulate how he considered or evaluated evidence from nonmedical sources, such as third-party lay witness statements. (AR 2672). Nevertheless, the ALJ took judicial notice of the lay witness statements and considered them in the decision, finding the statements not fully consistent with the overall evidence showing Plaintiff is more functional than alleged. *Id*.

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (quoting *Lewis*, 236 F.3d at 511). The 2017 regulations adjusted the requirements for an ALJ's consideration of nonmedical evidence such as lay witness statements. Under the plain language of the regulations, the ALJ must consider lay witness statements: "In evaluating the intensity and persistence" of symptoms, the ALJ "consider[s] all of the available evidence," including that from "medical sources and nonmedical sources about how [a claimant's] symptoms affect [her]." 20 C.F.R. § 404.1529(c)(1); *see also* SSR 16-3p, 2016 SSR LEXIS 4 (requiring ALJs to consider other evidence such as other non-medical sources to evaluate symptoms). However, 20 C.F.R. § 404.1520c(d), specifies that the ALJ is not required to articulate how he or she considered evidence from nonmedical sources "using the requirements in subparagraphs

(a) - (c)," applicable to evaluations of medical opinions. Rather, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he [or she] must give reasons that are germane to each witness." *Stout*, 454 F.3d at 1053 (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).[3]

"Where the ALJ gives clear and convincing reasons to reject a claimant's testimony, and where a lay witness' testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also germane reasons to reject the lay witness testimony." *Thomas v. Comm'r, Soc. Sec. Admin.*, 2022 U.S. Dist. LEXIS 18074, 2022 WL 292547, at *7 (D. Ariz. Feb. 1, 2022) (citing *Caleb H. v. Saul*, 2020 U.S. Dist. LEXIS 243198, 2020 WL 7680556, at *8 (E.D. Wash. Nov. 18, 2020)); *see also Connelly v.* Colvin, 2024 U.S. App. LEXIS 31191, at *6 (9th Cir. 2024) (citing *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (noting that when ALJ provided clear and convincing reasons to reject claimant's testimony and lay witness testimony was similar, "it follows that the ALJ also gave germane reasons for rejecting" the lay witness testimony). Such is the case here.

The nonmedical source statements provide observations of Plaintiff's symptoms that parallel Plaintiff's own subjective symptom statements. As discussed above, the ALJ

---

[3] This is an open question in the Ninth Circuit. *See Stephens v. Kijakazi*, 2023 U.S. App. LEXIS 27936, 2023 WL 6937296, at *2 (9th Cir. Oct. 20, 2023); *Fryer v. Kijakazi*, 2022 U.S. App. LEXIS 35651, 2022 WL 17958630, at *3 (9th Cir. Dec. 27, 2022); *Jamie S. v. Comm'r of Soc. Sec. Admin.*, 2024 U.S. Dist. LEXIS 81375, 2024 WL 1954143, at *8 n. 3 (W.D. Wash. May 3, 2024). Courts in this District interpret the revised regulations as not eliminating the ALJ's obligation to consider and address nonmedical source evidence and to articulate germane reasons for disregarding the same. *Megan Ann D. v. Comm'r of Soc. Sec. Admin.*, 2024 U.S. Dist. LEXIS 57231, 2024 WL 1308928, at *5 (D. Idaho March 27, 2024).

articulated clear and convincing reasons for rejecting Plaintiff's symptom statements. The ALJ therefore relied on the same reasons - inconsistency with the objective medical evidence and activities of daily living - as the bases for disregarding the nonmedical source statements. As such, the ALJ provided germane reasons for rejecting the nonmedical source statements. *Valentine*, 574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [Plaintiff's] own subjective complaints, and because [lay witness] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [lay witness] testimony."). Accordingly, the ALJs decision will be affirmed.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, IT IS HEREBY ORDERED that the Commissioner's decision finding that the Plaintiff is not disabled within the meaning of the Social Security Act is **AFFIRMED** and the Complaint (Dkt. 1) is **DISMISSED**.

DATED: July 18, 2025

_____
Honorable Debora K. Grasham
United States Magistrate Judge